## AUGUST HABERSTICH *et al.*
### *v.*
## MOSES B. ELLIOTT.

*Opinion filed February 20, 1901.*

1. WILLS—*word "bondsman" may mean surety on note.* The word "bondsmen," used in a will providing for the deduction from a son's share of the estate of the amount which the testator, "as one of his bondsmen, shall have to pay for him," does not necessarily mean that the testator's liability is evidenced by an instrument under seal, but may mean that he was surety on his son's notes.

2. SAME—*when judgment creditor and grantee of devisee take subject to lien of executrix.* Where a will provides that from the share of one of the testator's sons shall be deducted the amount which the testator, "as one of his bondsmen, shall have to pay for him," it is within the official duty of the executrix to adjust the payment of the obligation with the funds of the estate and exact a receipt from the son showing such payment, and that the amount is to be deducted from his share; and where such receipt is executed long prior to the son's confession of judgment and conveyance of his interest in the estate, his judgment creditor and his grantee take subject to lien of the executrix evidenced by the will and receipt.

3. VARIANCE—*variance must be pointed out by timely objection.* A variance between proofs tendered and the allegations can only be taken advantage of by a timely objection specifically pointing it out, so that it may be obviated by proper amendment.

*Haberstich* v. *Elliott,* 91 Ill. App. 662, reversed.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of DuPage county; the Hon. GEORGE W. BROWN, Judge, presiding.

WILLIAM NUNN, for appellants.

J. F. SNYDER, and JAY P. SMITH, for appellee.

Mr. CHIEF JUSTICE BOGGS delivered the opinion of the court:

This was a petition for partition of the south half of the west half of section 6, township 40, north, range 11, east, in DuPage county, and four acres in section 28,

township 41, north, range 11, east, in Cook county, (called the "timber lot,") among those entitled thereto, as tenants in common, as devisees under the will of Christian Haberstich, deceased.

Christian Haberstich, the testator, died November 3, 1884, leaving a last will and testament, bearing date April 6, 1883, which will was duly admitted to probate. The instrument appointed Elizabeth Haberstich, the widow, executrix, without bond, and otherwise reads as follows: .

"*First*—After the payment of all my just debts and of the expense attendant to my funeral, I give, bequeath, devise and assign unto my wife, Elizabeth, all my real and personal estate, of whatever kind or nature, to have and to hold the same, with all rights, privileges and appurtenances thereunto belonging or in anywise appertaining, and full right to dispose of the same at any time and in any manner she may see fit.

"*Second*—After the death of my wife the property remaining shall be divided among the following of my children in equal shares, to-wit: Magdalina Zarndt, wife of William Zarndt; Carolina Otten, wife of Diedrich Otten; Gottlieb Haberstich; Rosa Mench, wife of Jacob Mench; Emma Mahler, wife of William Mahler; Fritz Haberstich, Louisa Haberstich, Bertha Haberstich and Laura Haberstich, with the exception of the four first mentioned, whose shares will be subject to the following deductions: From Gottlieb Haberstich's portion the amount, now unknown to me, which I, as one of his bondsmen, will have · to pay for him; from Magdalina Zarndt's share the sum of one hundred ($100) dollars; from Carolina Otten's share one hundred and seventy-five ($175) dollars, and from Rosa Mench's share one hundred ($100) dollars, they having received the aforesaid amounts from me and given receipts, which are now in my possession.

"*Third*—My son August Haberstich having received his full share of my estate during my lifetime, shall have no further claim whatever on my estate after my decease."

It appeared the executrix paid all of the indebtedness of the testator, survived her husband nearly thirteen years and departed this life September 6, 1897.

The bill and the evidence, in the main, were directed to controversies relating to certain conveyances made by or to said Elizabeth Haberstich, widow, as executrix of said testator, asserted to be constructively fraudulent as against the interest of the residuary legatees under the will, and to divers transactions between the executrix and certain of the legatees, in the nature of payments in advance or advancements by the executrix to such legatees on their shares, respectively, under the will. The decree as to these issues is not questioned by this appeal except as to the disposition made by the chancellor of the share of Gottlieb Haberstich, one of such devisees.

Four certain notes, executed prior to the date of the death of the said testator, were filed and allowed against the estate of the testator, each being signed by the said Gottlieb Haberstich and the testator. The executrix negotiated a loan, and secured the same by mortgage on the lands here involved, to provide a fund wherewith to pay these claims, and paid and discharged them. Said Gottlieb executed and delivered to the executrix an instrument in writing, as follows:          *"Nov. 12, 1892.*

"I, Gottlieb Haberstich, do hereby acknowledge that my mother, Elizabeth Haberstich, as executrix of the last will and testament of my father, Christian Haberstich, deceased, has paid the sum of $1300 as the capital and interest of the notes which my father signed as surety, and I hereby agree that the said sum of $1300 shall be deducted from my share of the estate of my father when said estate shall be finally distributed.

GOTTLIEB HABERSTICH."

The indebtedness incurred by the executrix in order to procure the money to pay the claims allowed against the estate on the notes so given by Gottlieb and the testator was not paid by the executrix, but the payment thereof was extended from time to time, new mortgages being given, the latest of which mortgages being now in

full force and an encumbrance and lien on the land. On the 5th day of January, 1898, said Gottlieb confessed a judgment in favor of appellee, Elliott, in the circuit court of DuPage county, in the sum of $556.54, and on the 10th day of November, 1898, executed and delivered to one John Walther a quit-claim deed purporting to convey to Walther all interest the grantor had, by virtue of said will, in the said land in the county of DuPage, hereinbefore mentioned.

The chancellor decreed that Gottlieb was entitled to an undivided one-ninth interest in the "timber lot" in Cook county and Walther was entitled to Gottlieb's interest in the lands in DuPage county, subject, however, to the lien of the judgment confessed by Gottlieb in favor of appellee, Elliott. On appeal the Appellate Court for the Second District reversed the finding and decree of the circuit court as to the "timber lot," and ruled that the interest of Gottlieb in that property should be decreed to be subject to a lien for the payment of said $1300 paid by the executrix on the claims allowed, for the payment whereof the testator was but surety for Gottlieb, and otherwise affirmed the decree.

' The contention of the appellants before the chancellor, in the Appellate Court and in this court, was and is, that the testator was surety for the said Gottlieb on the notes filed and allowed against the estate, as hereinbefore mentioned, and that the moneys paid by the executrix to the parties in whose favor those claims were allowed against said estate (which money is now represented by the mortgage resting upon the lands) should be deducted from the share of Gottlieb, or made a charge or lien on the interest of the said Gottlieb paramount to both the lien of the judgment in favor of appellee, Elliott, and the interest of John Walther, as the grantee of said Gottlieb.

Witnesses were produced for the purpose of establishing the indebtedness on which said claims were allowed

was the debts of Gottlieb, and that the testator was only a surety. Some of the witnesses so testified, but there is much force in the objection their testimony was only hearsay. The instrument signed by Gottlieb, hereinbefore set out in full, together with other competent testimony, sufficiently established, as against him, the truth of the contention made by the appellants. We think, under all the circumstances of the case, it should also be deemed valid and effectual as against the said appellee, Elliott, and said John Walther. Said Elliott and Walther stand charged with notice that the interest of Gottlieb is such, only, as he should become entitled to under the will of his father. The will expressly declared that from Gottlieb's share as devisee should be deducted "the amount, now unknown to me, which I, as one of his bondsmen, will have to pay for him." The notes signed by Gottlieb and the testator were dated before the will was drawn, and were then outstanding. There is no proof he was surety for Gottlieb on any other paper. It is clear from the will that at the time the will was executed the testator was surety for his son Gottlieb, and that he intended, and so provided in his will, that any amount he should have to pay as surety for Gottlieb should be deducted from the equal share otherwise to be given Gottlieb in so much of his estate as should not be disposed of by his widow, who was given full power of disposition under the will. The word "bondsmen," as used in the will, does not of necessity import that the liability referred to by the testator was evidenced by an instrument under seal. The word "bondsman" is defined by Mr. Webster as follows: "A surety; one who is bound or gives security for another." In 4 Am. & Eng. Ency. of Law, (2d ed.) p. 701, the meaning of the word is said to be: "One who is bound by a writing obligatory for the performance of the act of another; a surety." Said Elliott and Walther were therefore advised by the will that the testator was surety for the payment of some obligation

of Gottlieb's. The records of the probate court disclosed to them that the testator's name appeared on these notes which were filed and allowed as claims against the estate, either as a joint debtor with or as surety for Gottlieb. Slight inquiry would have developed that more than five years before the interest of either of them in the share of said Gottlieb arose, said Gottlieb had executed and delivered to the executrix an acknowledgment in writing that the said executrix had in that capacity paid the sum of $1300 on claims allowed against the estate of the testator as surety for said Gottlieb, and that Gottlieb in the same instrument agreed that said sum of $1300 should be deducted from his share as devisee under the will. In the absence of any provisions in the will relating to the subject it would have become the legal duty of the executrix to recover from said Gottlieb any sum or sums which she, as executrix, had been required to pay out of the assets of the estate on claims allowed against the estate of the testator as surety for said Gottlieb. In view of the provisions of the will it was fairly within the official duty of the executrix to adjust the matter of the payment of the debts of Gottlieb out of the assets of the estate, by obtaining from said Gottlieb a written acknowledgment that the sums paid by her on said claims were paid to discharge the obligations of the testator as a surety for said Gottlieb, to which the will referred, and the receipt of said Gottlieb of the amount so paid as a payment or deduction from his share, in accordance with the requirement of the will. The execution of such a receipt, in view of the provisions of the will, relieved the executrix from the duty which would have otherwise devolved upon her of taking other steps to charge the said Gottlieb with and recover from him the amount so paid by the executrix in discharge of the debts of said Gottlieb. The execution of this instrument by Gottlieb, and its delivery to the executrix, as to Gottlieb, established all that was necessary to carry into

effect the provision of the will that the interest devised to Gottlieb should be subject to a deduction in the amount paid by the executrix on these claims paid as surety for said Gottlieb.　Ordinary care and diligence would have brought all these facts home to said Elliott and Walther, and we think their standing in court is not different from that of Gottlieb's.

It is, however, urged the bill is not framed upon that theory and does not ask that relief.　We have frequently declared the general doctrine that a complainant cannot make out one case by his bill and another by his proofs and have such relief as the proofs might warrant, but that the case made by the bill and proofs must correspond to entitle him to a decree in equity.

The appellee contends the bill alleges that the testator, during his lifetime, made an advancement to said Gottlieb of said sum of $1300, and that the same was evidenced in writing, as required by the statute, and for that reason should be deducted from the devise to Gottlieb or made the paramount lien on his entire interest in said premises.　It is manifest that the counsel who drafted the bill so inartificially, prepared it so as to justify, in some degree, this contention.　The allegations on this point are: "That Gottlieb Haberstich has received as an advancement on his share of the estate of Christian Haberstich, deceased, the sum of $1300, and has acknowledged the receipt of the same in writing;　*　*　*　that Moses B. Elliott pretends to claim a lien upon any interest, if any, which Gottlieb Haberstich may have in said estate of Christian Haberstich, deceased, by reason of a judgment obtained against said Gottlieb Haberstich in this court on January 5, 1898, for $551.54, and John Walther pretends to claim the interest, if any, which Gottlieb Haberstich may have in said estate, by reason of the quit-claim deed from said Gottlieb Haberstich and Marie Haberstich, his wife, dated November 10, 1898,　*　*　* *but your orators say that the said Gottlieb Haberstich received*

*before said judgment, and before the execution of the deed last
aforesaid, more than his full share of the estate of said Chris-
tian Haberstich, deceased,* as hereinbefore set forth, and
therefore neither the said Moses B. Elliott nor the said
John Walther has any claims or interest in any part of
said estate."

It is manifest that in drafting the bill counsel over-
looked the technical meaning of the word "advancement,"
and employed the word as it is not infrequently used in
other than legal papers, to signify merely the receipt of
moneys in advance of the time for payment. The bill set
forth the will *in hæc verba,* from which it appeared the
deduction to be made from Gottlieb's share was not the
amount of an advancement received from the father, but
the amount, if any, which the executrix should be forced
to pay out of the assets of the estate to satisfy claims
arising out of the obligations of the father, as a surety,
to pay the debts of Gottlieb.  The complainants, under
the allegations of the bill, tendered proof intended and
tending to show the testator was but a surety for Gott-
lieb on the notes in question, to which the appellee in-
terposed but a general objection, specifying nothing.
When, as in further support of the allegations of the
bill, the complainants offered in evidence the instrument
in writing signed by Gottlieb, counsel for appellee re-
marked, "objected to," but did not disclose any ground
of objection thereto. The instrument tended to establish
the averment that Gottlieb had, before the rendition of
the judgment in favor of appellee and before the execu-
tion of the deed to Walther, received the sum of $1300 on
his share of the estate by way of the payment of claims
allowed against the estate for his debts, the testator
being surety for their payment.  The general objection
made to the introduction of the instrument and the proof
as to suretyship of the testator on said notes raised only
questions of the relevancy of the instrument and the tes-
timony. (*Gage* v. *Eddy,* 186 Ill. 432.)  A variance between

proofs tendered and the allegations of the pleading can only be taken advantage of by a timely objection specifically pointing it out, so that it may be obviated by proper amendment. (*West Side Auction House Co.* v. *Connecticut Ins. Co.* 186 Ill. 156.) The particular allegations of the bill, considered in connection with the provisions of the will (which was a part of the bill) and with other of the allegations of the bill also therewith connected or related, are not so vague and imperfect that a decree granting the relief sought by appellants could not rest upon them. The case, on its merits, is decidedly with the complainants, and we cannot permit the objection, presented for the first time in this court, that there is a variance between the pleading and the proof, to operate to uphold a decree which is so manifestly inequitable.

The chancellor should have decreed that the interest devised to Gottlieb was first subject to the deduction set forth in the instrument signed by him, and established a lien therefor on the real estate in question; and, for the preservation, so far as may be, of the rights and interests of Walther and the appellee, Elliott, should have further decreed that said lien should be first enforced against the lands in Cook county, (the four-acre "timber lot,") in which appellee and said Walther have no interest, the remainder, if any, to be enforced against the lands in the county of DuPage, in which alone the appellee and said Walther are interested. In all other respects the decree is correct and is affirmed.

The decree of the circuit court and the judgment of the Appellate Court are each reversed in the respect herein indicated, and the cause is remanded to the circuit court, with directions to enter a decree in conformity with the views herein expressed.

*Affirmed in part and in part reversed and remanded.*